James Loftus et al., Plaintiffs in Error, v. W. C. Tucker, Defendant in Error.

Gen. No. 8,725.

Opinion filed October 13, 1933.

JAMES W. GORDON and WALKER & O'HARRA, for plaintiffs in error.

DOWNING & HELFRICH, for defendant in error.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is a writ of error sued out to review a decree entered in the circuit court of McDonough county dismissing a bill for want of equity filed by plaintiffs in error to obtain contribution from defendant in error.

The facts are all admitted by stipulation, and as only questions of law arising from the facts are involved, it is unnecessary to set out the pleadings as they are based upon the facts so stipulated.

In the Village of Raritan, Henderson county, Illinois, during and prior to December, 1920, a private bank, known as the Raritan Union Bank, operated as a copartnership. The legislature, by an act approved June 23, 1919, and ratified by a referendum in November, 1920, prohibited natural persons, firms and partnerships from conducting the business of banking within the State from and after January 1, 1921. (L. 1919, p. 235. Cahill's St. ch. 16a, ¶ 1 *et seq.*) It therefore became necessary for this bank to wind up its affairs and cease the business of banking. While it was in operation it had loaned to Mrs. Frances C. Bailey $29,098.54, and had taken her notes therefor, which

were secured by a second mortgage on 240 acres of land and also by a chattel mortgage. There was a first mortgage on the land for $17,000.

The Raritan State Bank was organized and received its charter to do business December 27, 1920, at which time the plaintiffs in error together with the defendant in error constituted its board of directors; the defendant in error remained a director until January 6, 1925, when he resigned, and since that time has not been a director or other officer of said bank. Immediately upon its organization it took over a large portion of the assets of the Raritan Union Bank, including the Bailey notes above mentioned, and carried them as assets of the bank. Payments on the Bailey notes were made prior to April 18, 1922, to the Raritan State Bank, and on that date there was a balance due thereon of $25,011.37, and an extension agreement was entered into between the bank and Mrs. Bailey whereby the time of payment thereof was extended to April 17, 1924.

On April 20, 1923, a new first mortgage on the land was executed by Mrs. Bailey to secure an indebtedness to the Chicago Joint Stock Land Bank of $23,000 and also a new second mortgage was executed by her to the bank to secure an indebtedness of $19,637.98, being the balance due the bank on the original indebtedness taken over from the Raritan Union Bank, and also including the amount of a note of $1,536.91, executed by Mrs. Bailey and owned by the First National Bank of Stronghurst, representing an indebtedness due from her to that bank.

On October 9, 1925, Mrs. Bailey conveyed by quitclaim deed all of her interest in said land to the Raritan State Bank, in full payment and satisfaction of her debt to the bank, and her notes were marked "paid" and surrendered to her, and her indebtedness was extinguished. The bank thereafter carried the

loan as an asset, as "other real estate." The bank leased the land, collected the rent, paid the taxes thereon and also the necessary instalments of principal and interest on the first mortgage until October 4, 1930, when, as the five-year period during which a state bank was permitted by law to carry such real estate as an asset was about to expire, the bank was therefore compelled to dispose of the land.

All of the plaintiffs in error jointly paid the bank $21,096.86 and the bank, at their request, executed a deed conveying the land to three of them, W. D. Bricker, D. M. Cortelyou and H. D. Tucker, as joint tenants; at the same time the plaintiffs in error executed a contract or trust agreement which recited in substance, among other things, that, in pursuance of a resolution of the board of directors of the Raritan State Bank of Raritan, the said bank conveyed to W. D. Bricker, D. M. Cortelyou and H. D. Tucker, as joint tenants, certain described lands, being the lands formerly conveyed to the bank by Frances C. Bailey; that the conveyance was made for the purpose of taking said real estate out of the assets of the bank, and the complainants, having advanced the sum of $21,096.86, are the equitable owners of the real estate; that by taking over the land they and each of them recognized a liability so to do by reason of having signed bonds to the auditor of the State of Illinois, but that it was not intended to release anyone else who, as a director of said bank, or otherwise, may at any time have signed such bonds and reserving the right of contribution as to any such person, and that, therefore, it was agreed that said W. D. Bricker, D. M. Cortelyou and H. D. Tucker should hold said lands for the exclusive benefit of the persons who contributed said sum of $21,096.86 to said bank, and to rent and handle the same, and to make in March of each year a report, in writing, showing in detail all of their transactions,

and that by signing such agreement the joint tenants accepted the trusts imposed on and vested in them, and that, in case of contribution from any other person, all of the parties to the agreement are to share equally in such contribution, and that upon a sale of the lands the net sum received to be divided between the parties in the proportion in which they contributed to said funds so raised by them to pay said bank for said real estate.

The defendant in error, W. C. Tucker, did not sign this contract, and in so far as the evidence discloses had no knowledge or participation in the transaction, and he was not at that time a director or other officer of the bank.

The capital stock of the Raritan State Bank, when organized, was and always had been $35,000 and never had any surplus. The Act of 1919, before mentioned, by section 10 thereof, Cahill's St. ch. 16a, ¶ 10, provided that the total liabilities of the bank, organized under said Act, of any person, corporation or firm, for money borrowed shall at no time exceed 15 per cent of the amount of the capital stock of such bank actually paid in and unimpaired and 15 per cent of its unimpaired surplus fund, and that every director who shall violate, participate in, assent thereto, or permit any of the officers, agents, or servants of the bank to violate the provisions thereof, shall be liable in his personal and individual capacity for all damages which the association, its shareholders, or any other persons shall have sustained in consequence of such violation, provided however, that if such bank shall cause to be deposited with the auditor of public accounts a sufficient bond, the auditor may issue to such bank a permit granting permission to the bank, within a period of one year, to carry, without liability against the officers and directors of such bank on account of any loans being excessive, loans otherwise excessive under the

provisions of the Act to the aggregate amount of such bond. As the Raritan State Bank was desirous of carrying such excessive loan the plaintiffs in error and the defendant in error, they being the then directors of the bank, executed bonds for three successive years, each in the principal sum of $100,000, deposited them with the auditor and received permits for such years, authorizing it to carry excessive loans to the amount of the bond. The first permit was granted to the bank in 1922, the second permit was granted September 25, 1923, and the third November 14, 1924. The bank carried other excessive loans in addition to the Bailey loan.

The claim of the plaintiffs in error for contribution is based upon the fact that the defendant in error was a co-obligor on these bonds. It is the theory of the plaintiffs in error that, by purchasing the Bailey notes from the Raritan Union Bank in 1920, the Bailey debt became a loan from the Raritan State Bank, and that, notwithstanding the fact that said indebtedness of Mrs. Bailey was fully paid and satisfied in 1925 by the conveyance of the lands to the Raritan State Bank and that the bank carried it as an asset as ''other real property'' for five years, during which time the bank collected the rents from the property, and there is no evidence that it made any effort to sell or dispose of the same, until compelled to do so by limitation of the law for holding land as real estate assets for more than five years, the obligation for the original excessive loan continued to the obligors of the bond, and it became their duty to pay the amount that might have become due on the Bailey notes, if they had not been paid, on the ground that the value of the land on October 4, 1930, was but little, if any, more than the amount due under the first mortgage.

The obligation of the bond, as defined by the statute and the bond, was for all damages which the bank,

its shareholders, or any other person shall have sustained, in consequence of excessive loans carried under the permit of the auditor. It is clear, therefore, that before plaintiffs in error can have contribution from the defendant in error there must be proof that the bank, its shareholders or some other person suffered loss by reason of such excessive loan, or inevitably would have done so, had the plaintiffs in error not made the payment to the bank under the circumstances shown, and also proof of what the amount of such loss would have been.

There is no proof whatever of the amount the Raritan State Bank paid to the Raritan Union Bank for the Bailey notes, nor for any of the other assets thereof purchased of it by the Raritan State Bank; there is no proof whatever of what the value of the mortgaged land was at the time of the purchase of the Bailey notes in 1920; there is no proof of what the value of the land was on October 9, 1925, when Mrs. Bailey conveyed it to the Raritan State Bank in payment of her notes; there is no proof of what the value of the land was on October 4, 1930, when plaintiffs in error paid the supposed amount assumed to be due on account of the Bailey loan, and had the bank execute the deed to the three grantees before mentioned. In fact the record is barren of any proofs by which the chancellor could find that any loss had resulted to anybody on account of said Bailey loan and much less the amount thereof.

Plaintiffs in error base their rights to contribution upon the presumption only that unless they had paid the amount they did, the bank, its shareholders, or some other person would have suffered damages or loss to that extent. The payment to the bank by the plaintiffs in error was made before the five-year limitation had expired, and while it is true a joint obligor may pay before maturity in a case where liability is

sure to accrue, and which payment will not be considered voluntary so as to defeat contribution (*Golsen v. Brand,* 75 Ill. 148), yet, in the case at bar, there are no proofs that there was or would be any liability. The loss, if any, was unliquidated and would have to be determined from the evidence. If, in fact, no loss did accrue to anyone by carrying the Bailey loan, then there could have been no liability to the obligors on the bond; if, however, any such loss did accrue for which the obligors could be held legally responsible, then before contribution can be had there must be proof of such loss and the amount thereof. There were no such proofs.

In our opinion the plaintiffs in error have failed to establish the right of contribution against the defendant in error. The decree of the circuit court is affirmed.

*Affirmed.*